1  BERNARD S. GREENFIELD [066017]
   McGRANE, GREENFIELD, HANNON
2  & HARRINGTON LLP
   40 South Market Street, Second Floor
3  San Jose, CA  95113
   Telephone:  (408) 995-5600
4  Facsimile:  (408) 995-0308

5  WILLIAM MCGRANE [057761]
   MAUREEN HARRINGTON [194606]
6  McGRANE, GREENFIELD, HANNON & HARRINGTON LLP
   One Ferry Building, Suite 220
7  San Francisco, CA  94111
   Telephone:   (415) 283-1776
8  Facsimile:    (415) 283-1777

9  Attorneys for Landlord Westport Joint Venture

10

11

12                UNITED STATES BANKRUPTCY COURT

13                NORTHERN DISTRICT OF CALIFORNIA

14                    SAN FRANCISO DIVISION

15

| In re | Case No. 05-30145 TC |
|---|---|
| FIRST VIRTUAL COMMUNICATIONS, INC., | Chapter 11 Case |
| Debtor, | REQUEST FOR PAYMENT OF ADMINISTRATIVE EXPENSE |
| | [11 U.S.C. §365(d)(3); B.L.R. 9014-1(b)(3)(A)-(B)] |
| | Tentative Hearing Date:  July 29, 2005 |
| | Tentative Hearing Time:  9:30 AM |
| | Courtroom:  23, 235 Pine Street, San Francisco, California |

REQUEST IS HEREBY MADE, pursuant to 11 U.S.C. sections 365(d)(3) and 503(b) and Bankruptcy Rule 9014-1, that payment be made immediately to Creditor Westport, lessor of the real property commonly known as 320 Bridge Parkway, Suite 202, Redwood City, California ( the "Premises") to Debtor First Virtual Communications, Inc. ("Debtor"), in the amount of $120,259.93. The amount represents rents and other charges accruing post-petition on the Premises from the date of Debtor's filing of the bankruptcy petition on January 20, 2005 ("Petition Date") through the date the lease for the Premises was rejected on March 24, 2005. These post-petition rents are actual, necessary costs and expenses of preserving the estate in that the Debtor retained possession of and continued to use the Premises until they were rejected.

Westport entered into a written "Lease Agreement" for the Premises with the Debtor on or about March 10, 2003, which was amended by an "Amendment No. 1 to Lease" dated May 27, 2003 and an "Amendment No. 2 to Lease" dated June 2, 2004 (collectively, the "Lease"). ("Declaration of Jeannette Schirtzinger, etc." filed herewith ("Schirtzinger Decl.") at ¶2 and Exhibit 1-3.) The Lease provides that the tenant shall pay monthly Basic Rent on or before the first day of each month. (Schirtzinger Decl., Exhibit 1 at ¶4(a), Exhibit 3 at ¶2.) Monthly Basic Rent for the Premises for January 2005 through March 2005 was $58,064.06. (Schirtzinger Decl., Exhibit 3 at ¶2.)

In addition to Basic Rent, the Debtor is required to pay as "Additional Rent":

- Taxes (Schirtzinger Decl., Exhibit 1 at ¶4(D)(a));
- Common area maintenance charges including landscape, utilities, and miscellaneous charges (Schirtzinger Decl., Exhibit 1 at ¶4(D)(c));

- Reconciliations of common area charges where tenant pays estimated charges monthly (Schirtzinger Decl., Exhibit 1 at ¶4(D)(d); and
- Management fees (Schirtzinger Decl., Exhibit 1 at ¶4(E)).

Since the Petition Date, the Debtor has failed to all pay base rent and additional rent due under the Lease in a timely manner, and therefore late fees are due and payable to Westport. (Schirtzinger Decl, Exhibit 1 at. ¶4(C).) In addition, the Lease requires payment of attorneys' fees incurred as a result of Debtor's default of any provision under the Lease. (Schirtzinger Decl., Exhibit 1 at ¶4(D)(d).) As a result of Debtor's failure to timely pay all base and additional rent due under the Lease post-petition, Westport has incurred attorneys' fees it is entitled to reimbursement for under the Lease. (*Id.*)

After notice and hearing, Debtor's motion for an order rejecting the Leases was granted on February 23, 2005 (the "Rejection Order"), and the Lease was subsequently rejected by the Debtor on March 24, 2005.

The post-petition amounts currently due to Westport are as follows:

| Total Rent Accruing and Unpaid from 1/20/2005 to 3/24/2005 | |
|---|---|
| **Description of Charges** | **Amount Due** |
| March base rent, pro-rated to rejection date | $44,952.82 |
| Taxes, pro-rated from 1/20/2005 to 3/24/2005 | $5,599.33 |
| Common area maintenance, including utilities, utility reconciliations, and landscaping | $41,424.05 |
| Management Fees | $1,348.58 |
| Late Fees for February and March 2005 Rent | $16,593.14 |
| Legal Fees, post-petition | $10,149.25 |
| Costs, post-petition | $192.76 |
| ***Unpaid Administrative Rent Total*** | ***$120,259.93*** |

(Schirtzinger Decl. ¶¶3-6, Exhibit 4;"Declaration of Maureen A. Harrington, etc." filed herewith ("Harrington Decl.") at ¶4-5 and Exhibit 1.) .)

The costs detailed above all arose post-petition and/or became due and payable under the terms of the leases in the post-petition period. Post-petition claims under an executory lease for non-residential property are administrative claims and should be paid on an ongoing basis. (11 U.S.C. §365(d)(3).) The Debtor has failed to pay these charges as they came due as required by 11 U.S.C. §365(d)(3), and Westport is entitled to immediate payment.

Section 365 (d)(3) unequivocally calls on the Debtor to "perform <u>all</u> obligations … under any unexpired lease of nonresidential real property, until such lease is assumed or rejected…" (emphasis added.) This has been interpreted to include "the payment of interest, late fees and attorneys fees and costs…" to the extent required by the terms of the lease. (*In re M.S. Freight Distribution, Inc.* (Bankr. W.D. Wash. 1994) 172 B.R. 976, 979, cited by *In re Cukierman* (9th Cir. 2001 .265 F.3d 846, 852.) Here, Westport is entitled to a 10% late fee on each unpaid rental installment, and "charges, costs and expenses, which Tenant is required to pay hereunder, together with all interest and penalties, costs and expenses including attorneys' fees and legal expenses, that may accrue thereto in the event of Tenant's failure to pay such amounts …." (Schirtzinger Decl., Exhibit 1 at ¶4(C) and (D)(d).

Rent for February 2005 was not timely paid despite warnings and a demand from Westport to the Debtor, and March 2005 rent has not been paid to date. (Schirtzinger Decl., ¶6 and Exhibit 4; Harrington Decl. ¶2). Rent not having been paid when due on the first of each month, a late charge of 10% on each payment is due and owing. (Schirtzinger Decl., Exhibit 1 at ¶¶4(A), 4(c) and 43, Exhibit 2 at

¶¶4(A), 4(c) and 43.)  The total late fees due and owing are set forth in detail in Exhibit 4 to the Schirtzinger Decl., and are summarized above.

In addition, Westport is entitled to attorneys' fees.  The Lease provides for payment by the tenant of any attorneys' fees incurred as a result of a tenant's defaults as additional rent.  (Schirtzinger Decl., Exhibit 1 at ¶4(D)(d).)  Because the Debtor unreasonably refused to timely pay the rent due and owing under the Lease despite notice that such rent was demanded, Westport was forced to employ attorneys and incurred attorneys' fees in (1) responding to Debtor's rejection motion and insuring that then unpaid rent was ordered paid and (2) bringing this motion to compel payment of administrative rent (Harrington Decl. at ¶3.)  All of these attorneys' fees were reasonably and properly incurred as a result of the Debtor's default under the terms of the Lease.  (Harrington Decl., ¶¶3-4, Exhibit 1.) Since the Debtor's defaults occurred during the post-petition/pre-rejection period, the attorneys' fees associated with those defaults should be recoverable as an administrative expense.

It has been noted that Section 365 (d)(3) provides a right without a remedy, in that a debtor is ordered to timely fulfill its lease obligations, but the statute provides for no specific remedy when this mandate is ignored.  In order to insure that landlords are fully compensated in the manner intended by the statute, Courts have broadly read the language of the statute to provide motivation for the Debtor/Tenant to meet its obligations.

> Congress made the provision for trustee compliance broad, extending it to cover all the obligations under a lease.  A broad interpretation of this provision is consistent with the purpose of §365 (d)(3), which is to ensure immediate payment of lease obligations so that the landlord is not left providing uncompensated for services…..  This purpose would be frustrated if we were to hold, as [the Debtor] urges, that §365(d)(3) applies only to obligations that are related to

the use of the premises or that constitute 'rent' as we have
interpreted that term in other section of the Bankruptcy Code.
***
Interpreting §365 (d)(3) as a bright-line rule, encompassing all
obligations contained in a bargained-for agreement, ensures prompt
performance of lease obligations by bankruptcy trustees.

(*In re Cukierman* (9th Cir. 2001) 265 F.3d 846, 850-851.)

Following this "bright line" rule, there can be no question that the provisions of the Lease calling for payment of attorneys' fees incurred as a result of the Debtor's default during the post-petition pre-rejection period are properly enforced against the Debtor as an administrative obligation.

In contrast to the attorneys' fee provisions examined in *Cukierman*, the Lease contains a fee provision that is not predicated on the bringing of suit or a ruling in favor of the landlord as a prevailing party:

> D. *Additional Rent.* Beginning with the Commencement Date of the Term of this Lease, Tenant shall pay to Landlord or to Landlord's designated agent in addition to the Basic Rent and as Additional Rent the following:
> ***
> (d) All charges, costs and expenses, which Tenant is required to pay hereunder, together with all interest and penalties, costs and expenses including reasonable attorneys' fees and legal expenses, that may accrue thereto in the event of Tenant's failure to pay such amounts, and all damages, reasonable costs and expenses which Landlord may incur by reason of default of Tenant or failure on Tenant's part to comply with the terms of this Lease.[1]

(Schirtzinger Decl., Exhibit 1 at ¶4(D)(d).)

There is no question that the Debtor was in default under the Lease by failing to make full payments under the Lease in the post-petition period. The

---

[1] The leases do contain a standard prevailing party fee provision (see Schirtzinger Decl., Exhibit 1 at ¶34), but the lease language relating to additional rent appears to be more applicable to this situation.

Debtor has offered no excuse for its failure to timely make such payments and inexplicably forced Westport to incur attorneys' fees and costs to force the Debtor to cure its defaults under the Lease. As stated in *In re MS Freight Distribution, Inc.* (Bankr. W.D. Wash. 1994) 172 B.R. 976, 979, "'all obligations' means just that. To the extent the Lease at issue here requires payment of interest, late fees and attorneys fees and costs, [the Landlord] may recover those amounts." The Lease language here, read in conjunction with the statute, mandates recovery of attorneys fees as an "obligation" incurred as a result of the post-petition, pre-rejection default of the Debtor.

The Court does have an obligation to insure that all fees awarded are reasonable. As set forth in the Harrington Decl. filed herewith, it is clear that the fees of $10,149.25 requested by Westport are reasonable under the circumstances. (Harrington Decl., ¶¶2-4 and Exhibit 1.) The hourly rates charged by McGrane, Greenfield, Hannon & Harrington LLP ("MGHH") are the regular fees charged to and paid by all clients and have been previously approved in the Northern District Bankruptcy Court as reasonable given the expertise and experience of counsel. (Harrington Decl., ¶4.) The case has been staffed with an eye to minimizing client cost, and the time expended is reasonable in light of the size of the claim and the complexity of the legal issues involved. (Harrington Decl., ¶4.)

Expenses incurred are likewise reasonable. MGHH charges only $.20 per page for in house copying, and utilizes overnight mail and messengers only when necessary to meet deadlines or handle original signatures required to be transmitted in a limited time period. The fees and expenses claimed by Westport total $192.76, and should be paid by the Debtor as an administrative expense. (Harrington Decl., ¶5 and Exhibit 1.)

1   It appears there are sufficient assets in the estate to pay Westport these
2   administrative rent amounts, as the Debtor has now completed the sale of
3   substantially all of its assets and the funds from that sale are available to the
4   Debtor.  Westport requests that the total administrative expense of $120,259.93 be
5   paid immediately.

6   Dated:  June 22, 2005                    McGRANE, GREENFIELD, HANNON
                                             & HARRINGTON LLP
7
8

9                                            By:     /s/ Maureen A. Harrington
                                                     Maureen A. Harrington
10                                           Attorneys for Landlord Westport Joint
                                             Venture
11